SARAH M. ROBINSON vs. J. J. HAGENKAMP et al.

Argued Nov. 22, 1892. Decided Dec. 27, 1892.

**The Facts Stated.**

H. contracted with the plaintiff to erect for her a block of buildings for the specified price of $23,800, which was to be paid at intervals of two weeks, in proportion to the progress of the work, upon estimates of the supervising architects; fifteen per cent. of the estimates being, however, reserved until completion. H., with the defendants as his sureties, executed an indemnity bond to the plaintiff, conditioned that he should perform his contract, and that they would save the plaintiff harmless from mechanics' liens. H. abandoned the contract before the completion of the buildings, whereupon, the plaintiff calling upon the defendants to take action in the premises, they employed M. to complete the buildings, and this was done; M. receiving the unpaid part of the price, including the fifteen per cent. thereof which had been reserved while H. was prosecuting the work. While H. was engaged in the construction, some extra work was done, and the specifications were departed from in some particulars, by direction of the plaintiff; but the defendants were not notified of this by the plaintiff. There were also extra work and departures from the specifications while M. was doing the work. Under both H. and M. debts were incurred by them which subjected the property to mechanics' liens, upon which judgment was afterwards rendered against the property. *Held:*

**Sureties by Assuming to Complete the Work Became Principals.**

When the defendants employed M. to complete the construction, they assumed the relation of principal obligors as to the work thereafter done; M. being their agent. They were responsible to the plaintiff for liens imposed on the property by reason of the debts incurred by M.

**Changes in the Work no Longer Available to Discharge Them.**

By availing themselves of the benefit of the contract, receiving (through M.) the contract price, including the fifteen per cent. reserved while H. was engaged in the work, they are precluded from making the defense that they were discharged from obligation by reason of the changes referred to. The plaintiff was under no obligation to voluntarily inform them of such changes.

**Time of Payments to Contractor Immaterial.**

Payments to the defendants' principal of proper amounts, but at intervals somewhat different from that specified in the contract, (two weeks,) deemed immaterial.

**Lienor's Action no Defense.**

The pendency of an action by other parties (the lienors) to recover personally against the defendants for materials sold while M. was doing the work is no defense to the action by this plaintiff to recover for the liens imposed on the property.

Appeal by defendants, J. J. Hagenkamp, Charles Schiller, and four others, from an order of the District Court of St. Louis County, *Ensign*, J., made August 31, 1892, denying their motion for a new trial.

The plaintiff, Sarah M. Robinson, made a contract August 1, 1890, with defendant J. J. Hagenkamp, by which he agreed for $23,800 to furnish materials and build for her a block of five brick and stone buildings on her lots in Duluth. The contract provided that he should pay all bills and keep the property free from mechanics' liens. On the same day the defendants Charles Schiller, C. H. Oppel, Fred Ruf, Gottlieb Krause and George W. Hathaway executed and delivered to plaintiff a bond in the penal sum of $8,000, conditioned to be void if Hagenkamp should faithfully perform the contract on his part and save her harmless from all claims of subcontractors, laborers, workmen and material men, for work done and materials furnished for, and used in, the construction of the buildings. Hagenkamp abandoned the work, and the sureties on November 7, 1890, undertook to complete the work. They employed Nicholas Mueller and the work was finished; but the bills were not all paid, and liens were filed, and an action to foreclose them commenced, in which judgment was rendered establishing liens to the amount of $8,631.91. Plaintiff then commenced this action upon the bond and upon the agreement they made November 7, 1890, to carry out Hagenkamp's contract. The issues were tried April 15, 1892. The plaintiff had a verdict for $8,631.91. Defendants moved for a new trial, and being denied, they appeal.

*Edson & Edson,* for appellants.

There were several important variations from and violations of the contract, causing an additional expense of $1,540. These changes were ordered and made in Hagenkamp's time. These

alterations in the work were, in effect, an alteration. and violation of the contract of the sureties, and by reason thereof they are discharged. *Miller* v. *Stewart*, 9 Wheat. 681; *Timlinson* v. *Simpson*, 33 Minn. 443; *Birckhead* v. *Brown*, 5 Hill, 634; *Barns* v. *Barrow*, 61 N. Y. 39; *Benjamin* v. *Rogers*, 126 N. Y. 60; *National Mech. Banking Ass'n* v. *Conkling*, 90 N. Y. 116.

The sureties were not aware of these alterations when they authorized Mueller to complete the contract which Hagenkamp had abandoned. They remained in ignorance of these alterations until Mueller had completed the work. Hence their acts did not amount to an assumption of the contract. *Maxwell* v. *Audiwood*, 15 Hun, 111; *Humphrey* v. *Havens*, 12 Minn. 298, (Gil. 196;) *Jackson* v. *Badger*, 35 Minn. 52; *Allis* v. *Goldsmith*, 22 Minn. 123.

The sureties acted under such a mistaken view of the facts when they assumed to carry out the Hagenkamp contract, that they are equitably entitled to be restored to the position they occupied before they assumed to carry it out. *Union Nat. Bank of Troy* v. *Sixth Nat. Bank of N. Y.*, 43 N. Y. 452; *Ligget* v. *Himle*, 38 Minn. 421; *Gerdine* v. *Menage*, 41 Minn. 417; *Kingston Bank* v. *Eltinge*, 40 N. Y. 391.

*Walter Ayers*, for respondent.

The sureties contend that by the alterations in the work, they were discharged; and had they known the facts, they would not have assumed and completed the contract. But this action is now against them as principals, not as sureties. It is upon their contract of November 7, 1890, to complete the work, as well as upon their bond. The bond is recited in the complaint as inducement to the main point, the assumption of Hagenkamp's contract. Plaintiff made no representations to the sureties to induce them to assume the contract and they made no inquiry of her. She owed them no duty to disclose the facts as to extra work done. *Etting* v. *Bank of United States*, 11 Wheat. 59; *Howe Machine Co.* v. *Farrington*, 82 N. Y. 121; *Sooy* v. *State*, 39 N. J. Law, 135; *Atlas Bank* v. *Brownell*, 9 R. I. 168; *Franklin Bank* v. *Cooper*, 36 Me. 179.

The position of the parties is now changed. They cannot be re-

stored to the position they were in when the sureties assumed to complete Hagenkamp's contract. *St. Anthony Falls W. P. Co.* v. *Merriman,* 35 Minn. 42.

DICKINSON, J.  The plaintiff entered into a contract with one Hagenkamp whereby the latter agreed to supply all necessary material for, and to erect, a block of five buildings for her and upon her land, in accordance with a plan and specifications which constituted a part of the contract.  The buildings were to be fully completed by the middle of November, 1890; and if not completed by that date the contractor agreed to pay to the plaintiff, as liquidated damages, the sum of $15 for each day that should elapse before completion.  The plaintiff agreed to pay to the contractor the sum of $23,800, payments to be made at intervals of two weeks of such proportion of that sum as the work done and materials furnished should bear to the whole, less fifteen per cent. thereof to be withheld by the plaintiff until the contract should be fully performed.  The amounts thus to be paid were to be determined by the estimates of Traphagen and Fitzpatrick, the supervising architects.

In accordance with a provision of this contract, Hagenkamp, the contractor, as principal, and these appellants (defendants) as his sureties, executed to the plaintiff their bond in the sum of $8,000, the condition of which was that Hagenkamp should faithfully perform the contract on his part, and save the plaintiff harmless from all claims of subcontractors, workmen, and material men for work or material employed in the erection of the buildings.

Hagenkamp entered upon the performance of the contract, but about the 1st of November he abandoned it, and absconded; the buildings being then only partially constructed.  The plaintiff's agent, one Mendenhall, then notified the appellants that plaintiff held them to responsibility as sureties, and called upon them to take action in the matter.  Thereupon, they, on the 7th day of November, employed one Mueller to complete the buildings in accordance with the terms of the contract.  He went on with the construction, but did not complete the buildings until about the 20th of April of the following year.

In the course of the prosecution of the work by the original contractor, Hagenkamp, some extra work was done by direction of the owner, not provided for in the contract, and there were some departures from the specifications, by direction of the plaintiff. No notice of this was communicated by the plaintiff to the defendants, when they, being notified of Hagenkamp's default, employed Mueller to complete the buildings. There was conflicting evidence as to whether they then knew that such changes had been made.

After Mueller undertook the work, and during its progress, there was other extra work done, and changes were made, by direction of the plaintiff.

During the progress of the work, both while Hagenkamp was carrying it on and also after it was undertaken by Mueller, lien claims arose for labor done and material furnished to them, respectively, and after the buildings were completed lien claims were filed against the property, amounting in all to more than $10,000.

The liens thus imposed while Mueller was carrying on the work amounted to $3,500. One of the lien claimants commenced an action against the plaintiff to enforce his lien; all other lien claimants being also made parties, pursuant to the lien law of 1889, ch. 200. The plaintiff notified these appellants of the pendency of such action, and called upon them to defend the same. Upon petition of some of such lien claimants, who claimed that these appellants were personally liable to them, they were made parties defendant. They interposed an answer joining issue upon the claims asserted to have arisen under Hagenkamp, as well as to those subsequently arising, and they participated in the trial as to such matters. Judgment was rendered, charging the plaintiff's estate with the aggregate amount of such liens, including the $3,500 above mentioned, for which the court found these appellants to be personally liable; but the rendering of a personal judgment against them was stayed pending a motion for a new trial. The premises were decreed to be sold to satisfy such liens.

This action was afterwards commenced to recover the amount of such liens, and also the liquidated damages specified in the original contract for the noncompletion of the buildings by the time there

designated. The plaintiff recovered a verdict for $8,631.91. The defendants appealed from an order refusing a new trial.

When, upon the default of Hagenkamp, the appellants, his sureties, took upon themselves the performance of the contract, as they did do when they employed Mueller to complete the construction of the buildings, they assumed the relation of principal obligors, and not merely that of sureties, at least as respects the work thereafter done. Having been theretofore obligated merely as sureties for the performance of the work by Hagenkamp, they then, with the consent of the plaintiff, stepped into his place, and undertook to do the work themselves, employing Mueller as their agent, with whom (Mueller) the plaintiff sustained no contract relation. They evidently authorized Mueller to receive payment from the plaintiff as the work progressed in accordance with the original contract, and payments were so made. The result was the same as if the defendants had themselves received the money. They were directly responsible as for their own neglect, and not merely as sureties, on account of liens imposed on the property for material purchased and labor employed by their agent, Mueller, in the prosecution of the work. They need not have undertaken the performance of the contract, but having done so, and having stepped into the place of the contractor, appropriating the benefits of the contract so far as to receive the contract price for doing the work, they were reciprocally bound, to themselves pay for material purchased by them and for labor employed in their undertaking; and if by their default the plaintiff's property was charged therefor, they were directly responsible to her.

It is said that the defendants should not be held to liability under this assumption of the work of construction, because the previous changes in the performance of the contract had legally discharged them from their obligation as sureties, and that the failure of the plaintiff to communicate such facts to them when they were called upon as sureties to take such action as Hagenkamp's default rendered necessary constituted a fraud upon them.

It will be unnecessary to consider whether such changes had been made in, or rather such departures from, the contract, as might have avoided the contract of suretyship, although we will say in passing

that the doing of extra work, for which the plaintiff would have been required to pay according to its reasonable worth in addition to the contract price, would not have had such an effect. Assuming that such changes had been made as might have discharged the defendants, they are in no position to avail themselves of that defense. By their own conduct they are precluded from doing so. They voluntarily sought to and did avail themselves of the benefits of the original contract by stepping into the shoes of their principal and receiving payment, not only for the work done by themselves, but, what is more to the point, by receiving payment for what had been done by Hagenkamp up to the time of his default. Up to that time fifteen per cent. of the proper proportion of the contract price for work done and material furnished had been withheld, pursuant to the contract; that percentage not being payable until the work should be completed. The defendants, taking the place of their principal in the further performance of the contract, received this reserved payment, by their agent, Mueller. Having thus availed themselves of the benefit of the contract of their principal, they should not be heard to say that they had been discharged from all obligations in respect to it. Nor was it the legal duty of the plaintiff, when she notified the defendants of Hagenkamp's default, to voluntarily inform them that such changes had been made in the construction. They must be regarded as having voluntarily determined to take upon themselves the further performance of the work of construction. They did this, not because they were legally bound to do so, but in order that they might secure the benefits to themselves which that course might yield. It is probable that they would not have done this had they not supposed that they were still liable as sureties; but, when considering whether they would themselves undertake to complete the buildings, it was incumbent upon them to seek information as to any facts which might affect their election, and especially would this be the case with respect to a matter of such common occurrence as changes in the progress of the work of house building. The failure of the plaintiff to voluntarily inform them of a matter of that kind cannot be deemed a fraudulent concealment. The fact that the defendants may have acted under a mistake is not now, at least, avail-

able to them as a defense; they having performed their undertaking, and having received and retained the percentage payable for work done by their principal, Hagenkamp.

The fact that changes in the construction were made while Mueller was carrying on the work cannot relieve the defendants from responsibility; for in legal effect such changes were made or consented to, and carried into effect, by themselves, through the agent whom they had employed to act for them.

What has been said may suffice with respect to the point that payments were not made to Hagenkamp "at intervals of two weeks." It may be added, however, that it does not appear that payments were not made in the proper amounts or proportions as the work progressed, and that was the essential feature of the contract in this particular. The mere fact that payments in proper amounts were made at intervals somewhat different from that named would be an immaterial variance from the contract.

It is assigned as error that the plaintiff was allowed to recover an amount in excess of the penalty of the bond. This was justified because the liability did not rest merely on the bond, but, as to the work done by the defendants themselves, they were primarily and directly responsible. When they undertook the work of construction, and in carrying it on and receiving the contract price therefor, they were bound to pay for labor employed and materials purchased, so that the property should not become chargeable therefor.

The plea in abatement, of a former action pending, is not sustained by the fact that to the extent of $3,500 of the amount included in the recovery in this action the defendants are also charged personally in the action still pending against them in favor of the lien claimants. It is a sufficient answer to that point to say that in the former action other parties, and not this plaintiff, are seeking such recovery; and moreover there would seem to be no obstacle in the way of the defendants protecting themselves from being required to pay this money twice, under the equitable doctrine of subrogation.

Exhibit Q, an instrument executed by the defendants, directed to Mueller, and advising him that they employed him to go on with construction of the buildings according to the original contract, was prop-

erly received in evidence to show that they did thus employ him, making him their agent. The law relating to the right of a stranger to a contract to maintain an action on it has no application to the case. This action is not based on that instrument.

We are of the opinion that none of the points relied upon by the appellants are well taken, and the order appealed from is affirmed.

(Opinion published 53 N. W. Rep. 313.)