GEORGE W. MARTIN AND OTHERS v. E. FRANK FEE AND OTHERS.[1]

June 14, 1929.

No. 27,408.

[1]Reported in 226 N. W. 203.

*M. H. Boutelle* and *Washburn, Bailey & Mitchell,* for appellant.

*O. J. Larson* and *Abbott, MacPherran, Dancer, Gilbert & Doan,* for respondents.

HOLT, J.

The defendant Webster Lumber Company appeals from an order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial. The defendants Eklund Brothers defaulted.

The action was for breach of contract. When the evidence closed each party moved for a directed verdict, it having been previously agreed that if plaintiffs prevailed the verdict should be for $14,-972.82, with interest from May 2, 1927. Plaintiffs' motion was granted and appellant's was denied.

The main controversy is upon the construction of the contract in so far as thereby obligations were assumed by appellant. The contract was between defendants Eklund Brothers, a partnership, and plaintiffs, also a partnership, whereby, for a consideration of $25,000 in hand paid and other valuable considerations, therein stated to be paid, the Eklund Brothers granted and sold to plaintiffs, 40,000 standard railroad birch and maple cross ties and 5,000 standard hemlock cross ties. It is conceded that Eklund Brothers breached this contract. Plaintiffs contend that appellant also became party to the contract by guaranteeing its performance. The provisions of some bearing upon appellant's undertaking read:

"It is further understood that the parties of the first part [Eklund Brothers] are to allow 10% on the above prices for financing and making the advance as called for in this agreement. It is further understood that they are to commence shipping these ties at once and ship ties on no other Maple & Birch order other than #1 & #2

not peeled except on this order until this contract is delivered and filled nor any other Hemlock order until this Hemlock contract is delivered and filled which they guarantee.to fill by May 1, 1927.

"It is further understood that the Webster Lumber Company, Inc., of Minneapolis, Minn., consent to this agreement and give the parties of the first part the right to make this sale and also to give preference in the shipping of these ties.

"Eklund Bros.

"By O. V. Eklund

"Martin Bros.

"By Thos. H. Martin.

"We have read the foregoing contract of agreement of sale made by Eklund Bros. and Martin Bros., both of Duluth, Minn., and we approve of this agreement and will see that the same is carried out.

"Webster Lumber Company, Inc.

"C. B. Webster

"Secy. & Treas."

Appellant construes the obligation it assumed to be merely that plaintiffs should have the preference over it in the delivery of the ties called for by the contract. We think this ignores the plain language of the undertaking subscribed by appellant, namely, "we approve of this agreement and will see that the same is carried out." Not only did appellant approve of that part of the contract wherein Eklund Brothers agreed to give plaintiffs preference in the shipping or delivery of the ties, but it undertook to have the contract carried out. The instrument was not prepared by a lawyer but by a business man, one of the plaintiffs. However it seems to us the phrase, "we * * * will see that the same [contract] is carried out," is the equivalent of guaranteeing its performance. The words "to see" a thing done has been held the same as an agreement to do it. Grant v. Wolf, 34 Minn. 32, 24 N. W. 289. Appellant also acknowledges that it knows the terms of the contract the performance of which it guarantees. We think the learned trial court rightly concluded that there was no ambiguity in the terms of the writing subscribed by appellant which opened the door for extrinsic evidence in

aid of its construction. Appellant clearly and definitely assumed to answer to plaintiffs for the failure of Eklund Brothers to carry out the contract with them. The Eklund Brothers' breach and the resulting loss to plaintiffs in a specified sum being conceded, a verdict therefor against appellant was properly directed. The evidence developed nothing to be submitted to a jury which might be of aid in construing appellant's obligation under the writing it executed.

We cannot follow appellant's argument, that because evidence was perhaps erroneously received as to conversations and negotiations leading up to the signing of the writing, which the law presumes to be merged therein, there must be a new trial, even though the court finally came to the conclusion, and correctly held, that the contract was so clear and unambiguous that extrinsic evidence was inadmissible as an aid to its construction. By finally directing a verdict the trial court ruled out the evidence tentatively received, and so must this court, with this exception. There may be references in a contract to matters well known to the parties to it, but unknown to a court or jury if the contract should be involved in litigation. Also the situation of the parties, for like reasons, well known to them, may not be disclosed by the contract, but be of some importance to a correct appreciation of its purpose. In the contract signed by Eklund Brothers and plaintiffs occurs this sentence:

"It is further understood that the Webster Lumber Company, Inc., of Minneapolis, Minn., consent to this agreement and give the parties of the first part [Eklund Brothers] the right to make this sale and also to give preference in the shipping of these ties."

Under all the authorities it would be proper to show the relation or situation the Webster Lumber Company then occupied with respect to the parties to the contract and to the contract itself at the time of its execution. These facts are undisputed: Plaintiffs were engaged in buying and selling forest products; so was appellant. Eklund Brothers were producing and selling such products. They had then an unfulfilled contract with appellant to furnish it

a large quantity of cross ties. On that contract appellant had advanced Eklund Brothers over $65,000 for which no ties had been delivered. The Eklund Brothers were unable to pay laborers and others so as to ship the ties manufactured or in process of manufacture. Appellant could or would advance them no more money. Thereupon plaintiffs' assistance was sought. In the conference between Eklund Brothers and plaintiffs an officer of appellant participated, and the contract in suit resulted.

The situation of the parties thus outlined was surely proper to be considered by the trial court, and is by this court. In the light thereof it is clear that appellant as well as Eklund Brothers and plaintiffs had a personal financial interest in making and carrying out the terms of the contract. Appellant was not a gratuitous surety or guarantor entitled to the most favorable consideration in the eye of the law.

We are not unmindful of the fact that since one of plaintiffs prepared the contract and the subjoined writing signed by appellant, any ambiguity therein should be resolved against plaintiffs. But we are persuaded that there is no ambiguity. In plain terms appellant guaranteed that Eklund Brothers would perform the contract with plaintiffs, and this no court could refuse to hold as a matter of law. That was the conclusion of the trial court. Evidence whether properly or improperly received could not and did not go to the jury. Hence even if part was inadmissible, it was not used for any purpose and was harmless and cannot be a basis for a new trial. There is no occasion to apply or discuss the many authorities cited by appellant as to the use and limitation of extrinsic evidence in aid of the construction of written contracts.

It is also contended that appellant was entitled to a directed verdict upon this state of facts, disclosed by the record. The contract recites that Eklund Brothers, "for and in consideration of $25,000.00 in hand paid" by plaintiffs, granted and sold, etc. When it was brought back to plaintiffs for execution, after having been executed by Eklund Brothers and appellant, they gave their check to Eklund Brothers for $20,000 only, and requested that the latter

notify them when the balance of $5,000 was needed. Within a week or ten days they were notified, and at once sent the amount as promised. It is said that this was a modification of the terms of the contract which released appellant. In support are cited J. R. Watkins Medical Co. v. McCall, 116 Minn. 389, 133 N. W. 966; Pioneer S. & L. Co. v. Freeburg, 59 Minn. 230, 61 N. W. 25; Board of Co. Commrs. v. Greenleaf, 80 Minn. 242, 83 N. W. 157. Also Stearns, Suretyship, § 77, reading:

"Where a valid contract subsists obligating the creditor to make advances to a definite amount any alteration of this contract reducing or enlarging the amount to be advanced will discharge the guarantor."

It is to be observed that the payment of the amount is a mere recital. There is nothing in the contract as to any date when the payment was to be made. The contract also provides that after Eklund Brothers "have delivered sufficient ties to take care of the advance" plaintiffs are to pay "cash upon receipt of invoices." Plaintiffs suggest that, when he signed, Mr. Webster knew, as he admits, that plaintiffs had neither signed the contract nor advanced any money, and would not do so until the guarantee was executed by his corporation. Therefore plaintiffs had a reasonable time within which to execute the contract after it was brought back and presented to them. So also with the payment of the money. But that suggestion aside, it seems to us that no term or part of the contract was altered or modified in any particular. The full sum of $25,000 was advanced before a single tie was delivered. It was advanced promptly to the full satisfaction of Eklund Brothers. To release a guarantor or surety because in the performance of a contract there had been a deviation or departure from its terms, it must appear that the deviation or departure was material. In Robinson v. Hagenkamp, 52 Minn. 101, 108, 53 N. W. 813, the court said: "The mere fact that payments in proper amounts were made at intervals somewhat different from that named would be an immaterial variance from the contract." McHenry v. Brown, 66 Minn. 123, 68 N. W. 847.

There was no alteration in the terms of the contract. It took effect and the parties acted under it when the full $25,000 had been paid.

The order is affirmed.

[1] Reported in 225 N. W. 909.